# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN

***************************

| | |
|---|---|
| NICOLAS G. VAN HEURCK, surviving spouse of MARIA RODRIGUEZ, Deceased, individually and on behalf of the SURVIVORS, and the ESTATE of MARIA RODRIGUEZ, | CASE NO. 3:23-cv-_____ |
| Plaintiff, | ACTION FOR WRONGFUL DEATH, PRODUCT DEFECT, SURVIVAL CLAIM, LOSS OF CONSORTIUM |
| v. | |
| BOEING DISTRIBUTION, INC. f/k/a AVIALL SERVICES, INC., and JOHN DOE CORPORATIONS 1 through 5, | JURY TRIAL DEMANDED |
| | PUNITIVE DAMAGES SOUGHT |
| Defendants. | |

## COMPLAINT

**COMES NOW** Plaintiff **NICOLAS G. VAN HEURCK**, surviving spouse of **MARIA RODRIGUEZ**, deceased, individually and as the Personal Representative of decedent and her Survivors and the Estate of Maria Rodriguez, by and through undersigned counsel KELLERHALS FERGUSON KROBLIN PLLC, against Boeing Distribution, Inc. formerly known as Aviall Services, Inc., and John Doe Corporations 1 through 5 (collectively the "Defendants") and state and allege as follows:

### INTRODUCTION

1. This is a lawsuit seeking damages from a horrific helicopter crash occurring on the island of St. Thomas wherein the pilot and passengers were killed. The instant lawsuit is brought on behalf of the pilot and her family.

## PARTIES

2. Plaintiff Nicolas G. Van Heurck is a citizen of the U.S. Virgin Islands and is the surviving spouse of Maria Rodriguez, deceased, and he brings an action on his own behalf for loss of consortium. Nicolas G. Van Heurck also brings, as the personal representative of Maria Rodriguez, a citizen of the U.S. Virgin Islands at the time of her death, claims on behalf of her survivors and her estate for wrongful death and claims on behalf of Maria for survival.

3. Defendant Boeing Distribution, Inc. f/k/a Aviall Services, Inc. ("Boeing") is a foreign corporation incorporated in the state of Delaware, with its principal place of business located at 100 N. Riverside Plz., Chicago, IL 60606. Boeing sells Rolls Royce manufactured compressor parts, see for example part number 23057112, a stage 2&3 compressor wheel manufactured by Rolls Royce.[1] Boeing advertises to customers in the U.S. Virgin Islands and sends parts ordered by customers to the territory.

4. Defendants John Doe Corporations 1 through 5 are unknown at this time, but believed to be distributors, manufacturers, installers, resellers, and/or maintainers of the faulty engine and/or components, none of which are citizens of the U.S. Virgin Islands.

## JURISDICTION & VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

6. The Division of St. Thomas and St. John is the proper venue pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in

---

[1] https://shop.boeing.com/aviation-supply/search?text=23057112.

this Division, the accident occurred in St. Thomas, and numerous witnesses are located in the St. Thomas and St. John Division.

## FACTUAL BACKGROUND

### Maria Rodriguez

7. Enrique Pedro Rodriguez and Cruz Maria Rodriguez moved to St. Thomas in 1971, when their daughter Maria Rodriguez was approximately six (6) years old.

8. Maria lived on St. Thomas and attended school here. She left St. Thomas to attend college in California where she met and married Nicolas Van Heurck, a helicopter pilot.

9. Maria moved back to St. Thomas in 1987 with Nicolas. Their children, Charlotte Van Heurck and Nicolas Madison Van Heurck, were born on St. Thomas shortly thereafter.

10. Thereafter, Maria began flying helicopters commercially on St. Thomas.

11. In 2011, Maria, by then an experienced helicopter pilot, started her own business, Caribbean Buzz Helicopters.

12. Caribbean Buzz Helicopters provides, among other services, sightseeing tours, charters, and airport transfers.

### The Helicopter

13. In 2019, Caribbean Buzz purchased and began operating a Bell 206B-III helicopter bearing registration N13AT.

14. The helicopter was powered by a Rolls Royce engine model M250-C20B.

15. The engine had been installed in the Bell 20B-III helicopter, new, in 1981.

16. Rolls-Royce's corporate predecessor, Allison Engine Company, originally developed the M250. The M250 has been manufactured, equipped, warranted, promoted, advertised, warned, distributed, and sold by Rolls-Royce since it acquired Allison in 1995.

17. The M250-C20B engine has many components. One component of the engine is a compressor.

18. The compressor contains six (6) wheels. The compressor wheels are labeled Stage 1, Stage 2, Stage 3, Stage 4, Stage 5, and Stage 6 Compressor Wheels.

19. Each compressor wheel has blades on the outer part of the wheel which compress the air passing through the compressor portion of the engine when the engine is operating.

20. The engine generates power by pulling air into the engine. The air passes through the compressor and pressure increases at each stage as the air is squeezed.

21. In the combustion chamber, the air is mixed with fuel and is ignited.

22. The hot air explosion is directed towards the back of the engine, generating more thrust and rotating the turbines, which in turn are linked to the front fan and compressors.

23. Between December 2008 and January 2009, the M250 engine in the subject helicopter was overhauled.

24. The overhaul included removing the compressor section bearing serial number CAC-36783 for overhaul and inspection and the installation of a new Stage 1 Compressor Wheel, Stage 2-3 Compressor Wheel, and impeller.

25. Defendants either produced, distributed, or serviced the Stage 2-3 Compressor Wheel and other components of the engine and compressor. Further maintenance was done in 2018.

## **The Crash**

26. On the afternoon of February 15, 2021, Maria was operating the Bell 206B-III helicopter for the purpose of taking a family of three (3), Daniel Yannone and Neisha Zahn, and their eighteen (18) year old son Tyler Yannone, on a seventeen (17) minute sightseeing tour around St. Thomas.

27. Daniel Yannone, Neisha Zahn, and Tyler Yannone were residents of St. Thomas.

28. The helicopter was operating off the western end of St. Thomas.

29. Some witnesses in the Botany Bay area of St. Thomas observed the helicopter in flight.

30. Luisa Villegas and her son, tourists who were staying at a rental property in Botany Bay, were watching the helicopter when they heard the sound of what Villegas described as the helicopter's engine decelerating. According to Villegas, the helicopter "went belly up" and then, very quickly, the helicopter crashed.[2]

31. Another witness captured the helicopter's final airborne moments in a nine (9) second video on his phone.

32. The video shows the helicopter, out over the ocean but close to St. Thomas, suddenly emit a large cloud of black smoke and then move sideways towards land within Botany Bay.

33. Villegas also observed the helicopter emitting black or dark-colored smoke immediately prior to the sudden crash.

34. Initially, the loud sound of the helicopter's engine can be heard in the video, but after the large cloud of black smoke appears from the back end of the helicopter, the engine noise abruptly stops.

35. The sudden silence of the helicopter's engine resulted in sudden and complete loss of power.

36. Screams of observers are heard at the end of the video as the helicopter descends towards, and then below, the tree line within Botany Bay.

37. Two (2) other observers reported seeing a lot of black smoke rising up from the dense foliage and smelling a chemical odor.

---

[2] Suzanne Carlson, *All Feared Dead in Helicopter Crash on St. Thomas*, VIRGIN ISLANDS DAILY NEWS, February 16, 2021.

38. Maria and her three (3) passengers died as a result of fatal injuries sustained in the helicopter crash.

39. When the helicopter lost power the pilot and passengers would have immediately realized they were crashing and would have experienced immense terror and fear as they fell from the sky and then were consumed in fire.

## The Survivors

40. Maria Rodriguez's survivors, as defined in the Virgin Islands Wrongful Death Act, 5 V.I.C. § 76(b)(1), are her husband, Nicolas G. Van Heurck, their two (2) adult children, Charlotte Van Heurck and Nicolas Madison Van Heurck, and Maria's parents Enrique Pedro Rodriguez and Cruz Maria Rodriguez.

## Post-Crash Investigation

41. The National Transportation Safety Board ("NTSB"), the Federal Aviation Administration ("FAA"), and Rolls Royce all came to St. Thomas to investigate the crash.

42. Caribbean Buzz has conducted some preliminary investigation of the crash and has concluded, based on eyewitness reports, that the engine emitted black smoke and immediately thereafter experienced a complete loss of power.

43. Based on the toxicology report, Maria did not have any drugs or alcohol in her system at the time of the crash.

44. As the video demonstrates, the engine suddenly stopped operating in mid-air, rendering the helicopter uncontrollable and resulting in the fatal crash.

45. The maintenance logs relating to the Bell 206B-III helicopter and its engine show that the helicopter and its engine were well maintained by Caribbean Buzz.

46. There is no evidence that pilot error contributed to the crash.

47. The engine or compressor, however, did not function as intended.

48. Caribbean Buzz determined that the helicopter crashed due to a contained failure within the compressor section of the helicopter's engine, however, Caribbean Buzz is conducting a further investigation as the NTSB only just recently concluded its investigation in January of this year now allowing for the engine and compressor to be released to Caribbean Buzz for its own inspection.

49. Upon information and belief, the helicopter crashed either due to a contained failure with the compressor or some other defect with the engine or compressor.

50. As described herein, Defendants acted with reckless indifference to Maria Rodriguez by among other things recklessly manufacturing, installing, and/or servicing, and recklessly failing to recall, a product that was fatally defective such that punitive damages must be awarded.

## COUNT I: WRONGFUL DEATH (against all Defendants)

51. Plaintiff hereby incorporate all previous paragraphs as if fully set forth herein.

52. The helicopter engine's total loss of power mid-flight caused the helicopter to suddenly and uncontrollably descend and crash, fatally injuring Maria Rodriguez and the passengers.

53. Maria's death was wrongful because it was caused by the negligence, product defect, failure to warn and/or breach of warranty of Defendants in manufacturing, distributing, or servicing its M250 engine and component parts.

54. Defendants had a duty to use reasonable care in the construction, distribution, and servicing of the engine as well as its components that were incorporated into the Bell 206B-III helicopter as part of the power plant for all foreseeable uses.

55. Defendants breached the aforementioned duties to use reasonable care and were negligent, careless, and reckless for reasons including, but not limited to, one or more of the following acts and/or omissions:

    a. By failing to properly supervise the assembly and maintenance of the aircraft engine in question as well as its component parts;

    b. By failing to ensure that safe and proper materials were incorporated into the aircraft engine and its component parts;

    c. By failing to specify, require, and provide components that are safe and proper for the assembly of the engine in question;

    d. By failing to ensure that safe and proper materials were incorporated into the aircraft engine's assembly;

    e. By failing to inspect and/or test the materials used in assembly of the aircraft engine;

    f. By failing to ensure the safe and proper design of the aircraft engine in question;

    g. By failing to properly complete repairs on the aircraft engine;

    h. By failing to properly inspect the aircraft engine; and,

    i. By other negligence, reckless, and careless acts and/or omissions not as yet discovered and defined.

56. The injuries suffered by the pilot and passengers and their ultimate deaths were the direct and proximate result of the negligent acts or omissions of Defendants.

57. As a result of Defendants' tortious conduct, Maria's husband, adult children, and parents, and Maria's estate have suffered harm as more specifically described herein.

58. Maria had close relationships with her husband, children, and parents.

59. Maria's husband, children, and parents all live on St. Thomas.

60. Maria's husband and two (2) children have worked for Caribbean Buzz Helicopters, the business Maria formed in 2011, for years and they continue to operate the business today.

61. As a result of Defendants' tortious conduct, Nicolas G. Van Heurck, Maria's husband, has been deprived of, among other things, Maria's love, society, companionship, affection, and support, and he has endured mental pain and suffering.

62. As a result of Defendants' tortious conduct, Charlotte Van Heurck, Maria's daughter, has been deprived of, among other things, her mother's support, services, companionship, instruction, and guidance, and she has endured mental pain and suffering.

63. As a result of Defendants' tortious conduct, Nicolas Madison Van Heurck, Maria's son, has been deprived of, among other things, his mother's support, services, companionship, instruction, and guidance, and he has endured mental pain and suffering.

64. As a result of Defendants' tortious conduct, Enrique Pedro Rodriguez, Maria's father, and Cruz Maria Rodriguez, Maria's mother, have also endured mental pain and suffering due to their daughter's untimely death and the loss of, among other things, her companionship and support.

65. As a result of Defendants' tortious conduct, Maria's estate has lost, among other things, the earnings Maria would have earned during the lifetime, and the net accumulations Maria would have acquired during her lifetime, and the estate has incurred funeral expenses as a result of Maria's death.

66. Accordingly, Plaintiff, on behalf of himself, Maria's survivors, and Maria's estate is entitled to damages in an amount to be proven at trial.

### COUNT II:  NEGLIGENCE (against all Defendants)

67. Plaintiff hereby incorporates all previous paragraphs as if fully set forth herein.

68. Defendants had a duty to use reasonable care in the construction, distribution, installation, and/or servicing of the engine as well as its components that were incorporated into the Bell 206B-III helicopter as part of the power plant for all foreseeable uses.

69. Defendants breached the aforementioned duties to use reasonable care and were negligent, careless, and reckless for reasons including, but not limited to, one or more of the following acts and/or omissions:

    a. By failing to properly supervise the assembly and maintenance of the aircraft engine in question as well as its component parts;

    b. By failing to ensure that safe and proper materials were incorporated into the aircraft engine and its component parts;

    c. By failing to specify, require, and provide components that are safe and proper for the assembly of the engine in question;

    d. By failing to ensure that safe and proper materials were incorporated into the aircraft engine's assembly;

    e. By failing to inspect and/or test the materials used in assembly of the aircraft engine;

    f. By failing to ensure the safe and proper design of the aircraft engine in question;

    g. By failing to properly complete repairs on the aircraft engine;

    h. By failing to properly inspect the aircraft engine; and,

    i. By other negligence, reckless, and careless acts and/or omissions not as yet discovered and defined.

70. The injuries suffered by the pilot and passengers and their ultimate deaths were the direct and proximate result of the negligent acts or omissions of Defendants.

71. Accordingly, Plaintiff, on behalf of himself, Maria's survivors, and Maria's estate is entitled to damages in an amount to be proven at trial.

## **COUNT III: STRICT PRODUCT LIABILITY (MANUFACTURING/DESIGN DEFECT)**

### **(against all Defendants)**

72. Plaintiff hereby incorporates all previous paragraphs as if fully set forth herein.

73. At the time of sale or distribution, the M250 engine and/or its component parts contained a defect which caused a total loss of power to the engine and the subsequent helicopter crash and loss of life.

74. The M250 engine, and or component parts, depart from their intended design, or alternatively, foreseeable risks of harm posed by the engine component parts could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design rendered the component parts not reasonably safe.

75. Components of the M250 engine were unsafe for use at the time Defendants placed those components into the stream of commerce in that they were susceptible to breaking in mid-flight, causing a total loss of power to the engine.

76. Defendants designed, manufactured, distributed, and/or serviced the engine component parts defectively, causing them to fail to perform safely, as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

77. The risks inherent in the design and manufacture of the M250 engine components significantly outweigh any benefits of such design and manufacture in that, reasonably alternative designs may have been available and feasible.

78. As a result of the defects of the M250 engine components described above, the helicopter descended uncontrollably, and Rodriguez and her three (3) passengers were fatally injured.

79. Accordingly, Plaintiff, on behalf of himself, Maria's survivors, and Maria's estate is entitled to damages in an amount to be proven at trial.

## COUNT IV: BREACH OF WARRANTY (EXPRESS OR IMPLIED)

### (against all Defendants)

80. Plaintiff hereby incorporates all previous paragraphs as if fully set forth herein.

81. The M250 engine and components were supported a warranty, express or implied, of merchantability, under which any goods sold by Defendants must be fit for the ordinary purposes for which such goods are used.

82. Defendants expected that its aircraft engine and components would be utilized by pilots in the same or similar manner in which Maria was using those products at the time of the crash.

83. Defendants broke their warranty by selling, distributing, or servicing the M250 engine and components that did not perform as warranted.

84. This defect rendered the aircraft engine and components unreasonably dangerous and, therefore, unfit for the ordinary purpose for which it is designed.

85. Defendants' breach of warranty proximately caused certain components to fail in mid-flight, which caused the helicopter to crash due to a total loss of engine power. As a result of the crash, Maria and her three (3) passengers were fatally injured and the helicopter was destroyed.

86. Accordingly, Plaintiff, on behalf of himself, Maria's survivors, and Maria's estate is entitled to damages in an amount to be proven at trial.

## COUNT IV: LOSS OF CONSORTIUM (against all Defendants)

87. Plaintiff hereby incorporates all previous paragraphs as if fully set forth herein.

88. As described in this Complaint, Defendants are liable for their tortious conduct in defectively manufacturing and/or designing, installing, and/or servicing components of the M250 engine.

89. Defendants' tortious conduct caused the M250 engine to fail in mid-air, resulting in the helicopter crash that fatally injured Maria and her three (3) passengers, the Yannone family.

90. As a direct result of Defendants' tortious conduct, Plaintiff Nicholas G. Van Heurck has been deprived of Maria Rodriguez's love, society, companionship, affection, and support and has suffered extreme emotional distress from the helicopter accident that tragically resulted in Maria Rodriguez's death.

91. Accordingly, Plaintiff Nicholas G. Van Heurck is entitled to damages in an amount to be proven at trial that will reasonably compensate him for the loss of Maria Rodriguez's love, society, companionship, affection, and support.

## COUNT V: PRE-IMPACT TERROR (SURVIVAL CLAIM) (against all Defendants)

92. Plaintiff hereby incorporates all previous paragraphs as if fully set forth herein.

93. During the interval between the engine's total loss of power and the fatal crash, Maria was aware the engine was experiencing a total loss of power mid-flight, while the helicopter was operating over the ocean and adjacent to steep terrain.

94. During that same time frame, Maria was aware the helicopter crashing into the hillside was inevitable and she was unable to control the helicopter's descent.

95. Maria endured terrifying emotional pain and suffering in the last moments she was alive.

96. This fright or terror was caused by the negligent acts or omissions of the Defendants.

97. Accordingly, on behalf of Maria Rodriguez, Plaintiff seeks damages for the pre-impact terror Maria endured in the last moments of her life.

**WHEREFORE**, Plaintiff respectfully requests a TRIAL BY JURY and demands judgment be entered in favor of Plaintiff and against Defendants. Plaintiff further requests that the Jury determine the specific amount to be awarded pursuant to the Wrongful Death claim to Nicolas G. Van Heurck, Charlotte Van Heurck, Nicolas Madison Van Heurck, Enrique Pedro Rodriguez, and Cruz Maria Rodriguez. As for damages it is requested that they be awarded for the following:

   a. Compensatory damages;

   b. Incidental damages;

   c. Consequential damages;

   e. Punitive damages;

   f. Interest;

   g. Attorney's fees and costs; and

   h. Any other relief deemed appropriate

Respectfully submitted,

DATED: February 14, 2023    */s/ Christopher Allen Kroblin*
**CHRISTOPHER ALLEN KROBLIN, ESQ.**
**MARJORIE WHALEN, ESQ.**
V.I. Bar Nos. 966 & R2019
KELLERHALS FERGUSON KROBLIN PLLC
Royal Palms Professional Building
9053 Estate Thomas, Suite 101
St. Thomas, V.I. 00802
Telephone: (340) 779-2564
Facsimile: (888) 316-9269
Email: ckroblin@kellfer.com
       mwhalen@kellfer.com